**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ZINK FOODSERVICE GROUP, INC.<br>655 Dearborn Park Lane<br>Worthington, OH 43085,<br><br>Plaintiff<br><br>vs.<br><br>FOODSERVICES BRAND GROUP, LLC<br>d/b/a 1880 Hospitality<br>c/o Corporation Service Co., Stat. Agent<br>251 Little Falls Dr.<br>Wilmington, DE  19808<br><br>and<br><br>Bryan O'Rourke<br>300 Knightsbridge Pkwy Ste 400,<br>Lincolnshire, IL  60069,<br><br>Defendants | CASE NO. _____<br><br>JUDGE _____<br><br><br><br>**COMPLAINT**<br><br>[Jury Demand Endorsed Hereon] |

Now comes Plaintiff Zink Foodservice Group, Inc. ("Zink"), by and through its undersigned counsel, and for its Complaint against Defendants Foodservices Brand Group, LLC d/b/a 1880 Hospitality ("1880 Hospitality") and Bryan O'Rourke ("O'Rourke") hereby avers as follows:

### I.  NATURE OF THE CASE

1. Zink brings this action against 1880 Hospitality and O'Rourke and seeks judgment against 1880 Hospitality as the successor of Crown Brands, LLC ("Crown Brands") and judgment against O'Rourke for fraud as an officer of Crown Brands.

## II. JURISDICTION AND PARTIES

2. Zink is an Ohio corporation with its principal place of business in Franklin County, Ohio. Its owners are residents of Ohio.

3. 1880 Hospitality is a company registered in Delaware but which has its principal place of business in Illinois. Upon information and belief, O'Rourke is the owner of 1880 Hospitality.

4. O'Rourke is an individual who resides in Illinois. He was the president of Crown Brands and is believed to be the owner of 1880 Hospitality.

5. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a). The jurisdictional amount exceeds $75,000. Zink is a citizen of Ohio. 1880 Hospitality and O'Rourke are citizens of Illinois.

6. Venue is proper in this Court pursuant to 28 USC §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred within this Division and District.

## FACUAL ALLEGATIONS

7. On February 14, 2019, Crown Brands and Zink entered into a certain Manufacturer's Representative Agreement ("Crown Brands Agreement"), whereby Zink would act as an independent sales contractor for Crown Brands by marketing and soliciting sales of Crown Brands products. A copy of the Crown Brands Agreement is attached as Exhibit A.

8. Pursuant to the terms of the Crown Brands Agreement, Zink was to earn commissions at the rate of between four percent (4%) and five percent (5%), depending upon the product that was sold.

9. During the time the Crown Brands Agreement was in effect, Zink fully performed its obligations by marketing and selling various Crown Brands products.

10. While Crown Brands did pay commissions owed to Zink during part of the time the Crown Brands Agreement was in force, Crown Brands stopped making the required commission payments to Zink in 2021.

11. At the end of 2021, and even after applying the payments Crown Brands actually made during that year, Zink was still owed Three Hundred Sixty Thousand Six Hundred Sixty-Eight and 72/100 Dollars ($360,668.72) from Crown Brands.

12. The amount owed grew to Three Hundred Ninety-Seven Thousand Nine Hundred Twelve and 01/100 Dollars ($397,912.01) by the end of January 2022 because of some additional commissions which became due during that month.

13. Crown Brands did make some payments towards this total, decreasing the amount owed by Fifty Thousand Dollars ($50,000),

14. Even after applying these payments, however, Crown Brands still owed Zink Three Hundred Forty-Seven Thousand Nine Hundred Twelve and 01/100 Dollars ($347,912.01) which is the balance due on the outstanding commissions.

15. This debt was the subject of litigation, namely *Zink Foodservice Group, Inc. vs. Crown Brands, LLC d/b/a Oneida Hospitality Group*, venued in this court and assigned case no. 2:22-cv-02803.

16. Crown Brands and its subsidiaries ceased operations in late summer/early autumn of 2022, and has not responded to the Complaint in the prior litigation. Moreover, counsel for Crown Brands has indicated it has no intention of defending against Zink's claims because it ceased operations and has no assets.

17. Zink is in the process of obtaining default judgment against Crown Brands in the previous litigation in the amount of $347,912.01, plus interest and costs.

18. However, as described herein, Zink believes 1880 Hospitality may be liable to Zink as the successor to Crown Brands, and O'Rourke may be liable to Zink because of numerous fraudulent representations and promises made by him to Zink concerning payment of the outstanding commissions.

19. On or about October 7, 2019, O'Rourke became president of Crown Brands.

20. As president of Crown Brands, O'Rourke was in a position to be fully informed about the financial condition of the company. O'Rourke would have also been in a position to know the company's strategic plans, including how to deal with financial shortfalls.

21. Thus, any representations by O'Rourke concerning the financial condition of the company and promises to pay creditors would have had an added veneer of trustworthiness.

22. O'Rourke also knew that representations from him, as president, inherently contained more force and authority than representations coming from other employees of the company. Therefore, O'Rourke would have had a great expectation that Zink and other creditors would have placed great trust and faith in the veracity of O'Rourke's representations and would have relied on them.

23. O'Rourke intended that these representations be believed and relied upon by Zink and other creditors. The fact that the representations were coming from the president gives further support as to the reasonableness of Zink's reliance on the statements, even though Zink had not been paid for many months.

24. In 2021, if not before, Crown was experiencing financial shortcomings and may have been insolvent.

25. Neither O'Rourke nor any other Crown Brands representative informed Zink of these issues.

26. Rather, Crown simply did not pay Zink anything at all in 2020, even though Crown was contractually obligated to pay Zink on a monthly basis for earned commissions.

27. Finally, in March 2021, Zink was paid for the 2020 commissions and some of the early 2021 commissions.

28. Zink continued to perform its obligations under the Agreement, and thereby continued to earn commissions throughout 2020 and 2021.

29. On or about December 1, 2021, Crown Brands terminated the Crown Brands Agreement with Zink.

30. Thereafter, Jim Zink informed O'Rourke that Crown Brands owed Zink $240,005.21 for unpaid commissions through September 30, 2021, with the months of October, November and December 2021 yet to be determined.

31. In 2021 and continuing in 2022, Zink continued to press Crown for payment of outstanding commissions.

32. In 2022, O'Rourke began to expressly communicate with Zink concerning the outstanding debt.

33. There were several communications between O'Rourke and Jim Zink during 2022 concerning the unpaid and overdue commission payments.

34. In these communications, O'Rourke took personal responsibility for Zink not being paid by Crown Brands, represented Zink would be paid for its commissions, and continually promised to provide Zink with a payment plan for the outstanding commissions.

(A) On December 3, 2021, John Schroeder of Crown Brands wrote to Jim Zink that "we are working on the payment plan and should have to you shortly."

(B) When no payment plan had been received by January 14, 2022, Jim Zink wrote to John Schroeder of Crown Brands, asking for a substantive response. Instead of Schroeder, O'Rourke replied the same day by stating: "I take Full Responsibility on the Commissions to Zink. We truly got caught with our pants down on Freight Costs/Operational Costs. Not your Problem, completely OHG!"[1]

(C) On March 6, 2022, when, again, no payment had been made and no indications that payment would be made, Jim Zink sent an email to O'Rourke, stating: "Can you please update me on this tomorrow? We need to wrap this up immediately." O'Rourke responded the same day by writing "Working on this Settlement for Zink. Should have plan together, this Week."

(D) When Crown Brands still did not pay or provide the plan to pay Zink, on Monday, March 21, 2022, Jim Zink sent another email to O'Rourke, stating: "The lack of follow through on your end, coupled with zero communication, has caused my patience to wear thin. I have been able to count on your word in the past, is it still good? I need a written response as to how OHG will be paying ZFG the $350+ owed in past due commissions, no later than end of business on Tuesday."

(E) Later, on March 21, 2022, O'Rourke emailed Jim Zink, saying: "Jim, I take Full Accountability for this Situation. I didn't/Nor will i forget about this outstanding debt to Zink. I appreciate your Patience's/Professionalism, holding it Together . . ." [sic]

35. O'Rourke made these representations and promises to Zink while knowing Zink would not be paid due to the financial condition of the company.

36. Moreover, it is assumed O'Rourke made similar false representations to other creditors of Crown and its subsidiaries.

37. O'Rourke made these false representations to Zink with the intent Zink would rely on them and not take legal or other action due to the nonpayment of the commissions.

---

[1] "OHG" refers to Oneida Hospitality Group, another trade name or subsidiary of Crown Brands.

6

38. Furthermore, O'Rourke intended that these false representations would have an added appearance of veracity since they were being made by the president of Crown Brands.

39. On or about August 22, 2022, O'Rourke created and registered Foodservice Brands Group, LLC with the Delaware Secretary of State.

40. On or about September 19, 2022, White Horse Capital Management, LLC ("White Horse"), as the purported agent for an intentionally undisclosed secured lender, promulgated a notice that the lender was exercising its rights as a secured party, was foreclosing on all the assets of Crown Brands and its subsidiaries, and was selling all the assets of Crown Brands and its subsidiaries at a private sale on September 30, 2022.

41. On or about September 30, 2022, O'Rourke directly or indirectly purchased all of the assets of Crown Brands and its subsidiaries from the undisclosed secured lender of Crown Brands.

42. White Horse, a Delaware limited liability company located in New York City, acted as the agent for the undisclosed secured lender and facilitated the sale.

43. Now, theoretically stripped of Crown Brands' liabilities to unsecured creditors like Zink, O'Rourke and 1880 Hospitality are engaged in the same business as Crown Brands, using some or all of the same vendors, and is operating from the same address and phone number.

**FIRST CAUSE OF ACTION**
[SUCCESSOR LIABILITY]

For its First Cause of Action, Zink hereby restates each preceding paragraph as if fully rewritten herein and further states:

44. Generally, successor companies are not liable for the debts of the predecessor company.

7

45. However, exceptions to nonliability exist, such as: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

46. O'Rourke, 1880 Hospitality and perhaps other as-yet unknown parties conspired and colluded to shed the unsecured liabilities of Crown Brands and continue the business of Crown Brands.

47. O'Rourke was aware of the poor financial condition of Crown Brands, made false representations about payment to Zink and presumably other unsecured creditors in order to dissuade them from acting on the debt owed, formed 1880 Hospitality about a month before the "private sale" of the Crown Brands assets, purchased the assets of Crown Brands and its subsidiaries and thereafter continued the business of Crown Brands and its subsidiaries using the same vendors, address, and phone number as Crown Brands.

48. Additionally, it is reasonably suspected that the undisclosed secured lender of Crown Brands is also the secured lender of 1880 Hospitality.

49. The "private sale" of the secured collateral of Crown Brands and its subsidiaries was not commercially reasonable under the circumstances, and was contrived under circumstances to allow O'Rourke to directly or indirectly purchase all of the collateral on favorable terms and which allowed him and 1880 Hospitality to continue the business of Crown Brands unencumbered by the unsecured debt.

50. Therefore, the transaction between Crown Brands, the undisclosed secured lender, O'Rourke and 1880 Hospitality was undertaken for the fraudulent purpose of escaping liability for Crown Brands' obligations to Zink and other creditors.

51. 1880 Hospitality is, accordingly, the legal successor to Crown Brands and is liable for the debt owed by Crown Brands to Zink.

## SECOND CAUSE OF ACTION
[Officer Fraud]

For its Second Cause of Action, Zink hereby restates each preceding paragraph as if fully rewritten herein and further states:

52. The several statements described above made by O'Rourke were material to the relationship between Crown and Zink.

53. The several statements described above were untrue and were known by O'Rourke to be untrue when he made them or, alternatively, the statements were made in culpable ignorance of their truth or falsity.

54. The several statements described above and others of a like character were reasonably relied on by Zink, especially because they were made by the president of Crown Brands.

55. O'Rourke made the statements intending that Zink should rely on them and forestall Zink from taking any legal action until the assets of Crown Brand and its subsidiaries were foreclosed on by the undisclosed secure lender.

56. Zink's reasonable reliance on the fraudulent statements of O'Rourke caused it injury.

57. Although O'Rourke was a corporate officer of Crown Brands, he is nevertheless personally liable for fraudulent acts of his own or in which he participates.

9

58. O'Rourke is, therefore, personally liable for the debt owed to Zink by Crown Brands.

WHEREFORE, Plaintiff Zink Foodservice Group, Inc. prays for judgment in its favor against Defendants Foodservice Brands Group, LLC and Bryan O'Rourke (jointly and severally) in the amount of Three Hundred Forty-Seven Thousand Nine Hundred Twelve and 01/100 Dollars ($347,912.01), plus interest, costs, attorney's fees and such other and further relief as this court deems proper.

    Respectfully submitted,
    CORSARO & ASSOCIATES CO., LPA

By: /s/ Steven B. Beranek
    Steven B. Beranek, Esq. (OH Reg. #0066847)
    28039 Clemens Road
    Westlake, OH 44145
    Ph: (440) 871-4022
    Fax: (440) 871-9567
    Email: sberanek@corsarolaw.com
    *Attorney for Plaintiff Zink Foodservice Group, Inc.*

## JURY DEMAND

Plaintiff Zink Foodservice Group, Inc. hereby demands a trial by jury on all issues so triable.

/s/ Steven B. Beranek
    Steven B. Beranek, Esq. (OH Reg. #0066847)
    *Attorney for Plaintiff Zink Foodservice Group, Inc*